UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WEIR-COVE MOVING & STORAGE CO., ) <br> PLAINTIFF, ) <br> ) <br> vs. ) <br> ) <br> FLEET OWNERS INSURANCE FUND ) <br> AKA FLEET OWNERS-LOCAL UNION ) <br> 964 INSURANCE FUND, et al., ) <br> ) <br> DEFENDANTS. ) | CASE NO. 1:18-cv-74 <br> ("*Weir-Cove* lawsuit") <br> <br> <br> JUDGE SARA LIOI |
| SHARON McHUGH, et al., ) <br> PLAINTIFFS, ) <br> ) <br> vs. ) <br> ) <br> TRINITY HEALTH SYSTEM, et al. ) <br> DEFENDANTS. ) | CASE NO. 1:17-cv-1413 <br> ("*McHugh* lawsuit") <br> <br> JUDGE SARA LIOI |

MEMORANDUM OPINION AND ORDER

The Court will address herein the following motions: (1) the motions to consolidate the *Weir-Cove* lawsuit (Doc. No. 29) with the related *McHugh* lawsuit (Doc. No. 76); (2) the motions for sanctions filed in each action (Doc. Nos. 38 and 79, respectively); and (3) the motion to dismiss the intervenor complaint in the *Weir-Cove* lawsuit (Doc. No. 21). All motions are fully briefed and ripe for resolution.

I. BACKGROUND

*The McHugh Lawsuit*

On July 5, 2017, Fleet Owners Insurance Fund (the "Fund") and Sharon and Charles McHugh ("McHughs") filed the *McHugh* lawsuit in federal court. It is undisputed that the Fund

is a non-profit Taft-Hartley multi-employer health and welfare insurance fund formed by Teamsters 964 (the "Union") and participating employers with collective bargaining agreements. Charles McHugh is a member of the Union, and Sharon is his wife. Plaintiffs in the *McHugh* lawsuit brought suit against the Fund's administrator, Medical Mutual Services, LLC ("MMS"), and various medical service providers who had provided more than $1,200,000 in medical services to Sharon, beginning in 1985. Plaintiffs alleged that the defendant medical service providers were fiduciaries, pursuant to the Employee Retirement Income Security Act ("ERISA"), and that they breached their duty to the Fund and, by extension, the McHughs. All of the medical service providers moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that they did not qualify as fiduciaries under ERISA. MMS also moved for partial judgment of the pleadings, under Rule 12(c), requesting that the Court dismiss the state law claims against it as preempted under ERISA.

On June 25, 2018, the magistrate judge issued a report and recommendation ("R&R"), recommending that the Court dismiss all claims against the medical services providers and all state law claims against MMS. (Doc. No. 85.) After overruling plaintiffs' objections, the Court entered an order adopting the R&R, leaving only Count 1 (breach of fiduciary duty under ERISA) against MMS. (Doc. No. 89 (Memorandum Opinion and Order ["MOO"]).).

*The Weir-Cove Lawsuit*

On January 10, 2018, plaintiff Weir-Cove Moving and Storage Company ("Weir-Cove") brought suit against the Fund and two of the trustees,[1] seeking a declaration that its employees, purportedly including Charles McHugh, as members of the Union, are valid participants in the

ERISA Plan governing the Fund. (*Weir-Cove* lawsuit, Doc. No. 1 (Complaint) ¶ 2.) Weir-Cove also requests a permanent injunction to prevent the Fund from refusing to treat Weir-Cove employees as plan participants. (*Id*. ¶ 3.) The McHughs are not parties to the *Weir-Cove* lawsuit.

The case was assigned to the docket of the Honorable Dan Polster. On February 5, 2018, Judge Polster granted the motion of General Truck Driver's and Helper's Union, Local No. 92 ("Local 92"), to intervene. (*Weir-Cove* lawsuit, Doc. No. 6 (Motion to Intervene); Non-Document Order, dated 2/5/2018.) On February 6, 2018, Judge Polster entered an order consenting to the transfer of the *Weir-Cove* Lawsuit to the docket of the undersigned as a related case, in accordance with L.R. 3.1(b)(3). (*Weir-Cove* lawsuit, Doc. No. 7 (Consent and Order of Transfer).)

## II. MOTIONS TO CONSOLIDATE

In the motion to consolidate filed in the *McHugh* lawsuit, the Fund and the McHughs argue that consolidation is appropriate because the *Weir-Cove* lawsuit is merely the liability portion of the *McHugh* lawsuit. Specifically, they maintain that the *McHugh* lawsuit will determine the proper amount of the medical expenses incurred by Sharon McHugh, while the *Weir-Cove* lawsuit will determine who is responsible for paying these expenses. (*McHugh* lawsuit, Doc. No. 76-1 at 1161.[2]) They stress that both actions arise from the same set of facts—the factual circumstances surrounding the medical expenses incurred by Sharon McHugh—and that consolidation will conserve resources and avoid unnecessary delays. (*Id*. at 1161-62.)

The Fund advances similar arguments in favor of consolidation in its motion filed in the

---

[1] For purposes herein, the Court shall refer to both the Fund singularly, and collectively with the trustees, as the "Fund."

[2] All page references are to the page identification number generated by the Court's electronic docketing system.

*Weir-Cove* lawsuit.[3] In addition to suggesting that the cases are merely two sides of the same proverbial coin, the Fund posits that the two actions will involve many of the same witnesses and documents, and that there is nothing about the facts and issues of either case that would cause confusion if the cases were consolidated. (*Weir-Cove* lawsuit, Doc. No. 29-1 at 712.) It reiterates that consolidation will save time in discovery and at trial. (*Id*. at 713.)

Rule 42(a)(2) provides that a court may consolidate actions involving "a common question of law or fact[.]" Fed. R. Civ. P. 42(a)(1); *see Cantrell v. GAF Corp*., 999 F.2d 1007, 1010-11 (6th Cir. 1993). The objective of consolidation is to administer the court's business economically and expeditiously while ensuring justice for the parties. *Advey v. Celotex Corp*., 962 F.2d 1177, 1180 (6th Cir. 1992). Consolidation of separate actions does not merge the independent actions into one suit. *Id*. The party seeking consolidation bears the burden of demonstrating the commonality of law, facts, or both in cases sought to be combined. *Young v. Hamrick*, No. 07-12368, 2008 WL 2338606, at *4 (E.D. Mich. June 4, 2008). Once the threshold requirement of establishing a common question of law or facts is met, the decision to consolidate rests in the sound discretion of the district court. *Stemler v. Burke*, 344 F.2d 393, 396 (6th Cir. 1965). The court weighs the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice. *Banacki v. OneWest Bank, FSB*, 276 F.R.D. 567, 571 (E.D. Mich. 2011). Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial. *Id*. at 572. "[C]onsolidation is not justified or required simply because the actions *include* a common question of fact or law." *Id*. "When cases involve *some* common

---

[3] Finding a reply brief unnecessary, the Court **DENIES** the motion to file a reply (*Weir-Cove* lawsuit, Doc. No. 36).

issues but individual issues predominate, consolidation should be denied."[4] *Id*.

The Court finds that the Fund has failed to carry its burden of demonstrating that consolidation would be appropriate here. While the factual impetus for both actions may be the same—Sharon McHugh's incurrence of substantial medical expenses—divergent legal issues predominate in these cases. The *McHugh* lawsuit has now been reduced to the solitary legal issue of whether MMS met its fiduciary duties under ERISA by sufficiently scrutinizing the medical providers' charges to Sharon McHugh. The *Weir-Cove* lawsuit raises employment issues relating to the employment status of Charles McHugh and Weir-Cove's other employees. Rather than conserve judicial resources and reduce the burden on the parties, the Court, and (potentially) a jury, consolidation will only complicate these cases by injecting entirely new and unrelated issues into each case. Moreover, the scope of discovery in each action will be different and little, if any, economy would be realized by combining these cases for discovery.

Additionally, the parties are different and the cases have been pending in this Court for

---

[4] In exercising its broad discretion, the trial court must consider whether the risks of prejudice and confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, the burden on witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits, and the relative expense to all concerned of a single trial versus multiple trials. *Cantrell*, 999 F.2d at 1011. "Care must be taken that consolidation does not result in unavoidable prejudice or unfair advantage." *Id*. Even though conservation of judicial resources is a laudable goal, "if the savings to the judicial system are slight, the risk of prejudice to a party must be viewed with even greater scrutiny." *Id*.

different periods of time. Weir-Cove is not a party to the *McHugh* lawsuit, and the McHughs are not parties to the *Weir-Cove* lawsuit. The *McHugh* lawsuit was filed six months prior to the filing of the *Weir-Cove* lawsuit, and, because of the extensive early motion practice in the *McHugh* lawsuit, that case has been delayed. The Court is unwilling to further delay the *McHugh* lawsuit while the parties in the *Weir-Cove* lawsuit engage in discovery that will have little or no bearing on the *McHugh* lawsuit.

Finally, the Fund argues that consolidation would guard against inconsistent factual and legal findings and conclusion. (*Weir-Cove* lawsuit, Doc. No. 29-1 at 712.) However, the fact that both cases are pending before the same judicial officer already minimizes the risk of inconsistent results and lessens the burden on the Court. *See LSP Techs., Inc. v. Metal Improvement Co., LLC*, No. 2:10-cv-526, 2010 WL 3447834, at *2 (S.D. Ohio Aug. 30, 2010) (declining to consolidate cases and finding the risk of inconsistent claim constructions to be minimal where the same district judge presided over both cases).

Based on the foregoing, the Court concludes that its discretion is better exercised by denying consolidation. The Fund's motions for consolidation are **DENIED**.

### III. MOTIONS FOR SANCTIONS

There are two motions for sanctions that have been filed against the Fund. In the *McHugh* lawsuit, defendant UPMC Presbyterian Shadyside ("UPMC") seeks Rule 11 sanctions against the Fund, claiming that the complaint in the *McHugh* lawsuit is "both factually misleading and legally frivolous." (*McHugh* lawsuit, Doc. No. 79 at 1179.) Specifically, UPMC alleges that the complaint is dependent on "material misrepresentations" relating to the emergent nature of Sharon McHugh's medical condition and the advisability of the decision to transfer her to

another medical facility. (*Id.*, Doc. No. 80 at 1187.) In fact, UPMC suggests that the "entire litigation has been brought for the improper purpose of avoiding [the Fund's] legal obligations to compensate medical providers for services rendered to one of its covered members." (*Id.*, Doc. No. 79 at 1179.) It seeks an award of reasonable attorney's fees and expenses. (*Id.*)

In the *Weir-Cove* lawsuit, Weir-Cove alleges that the Fund's averments and counterclaims are improper and frivolous. (*Weir-Cove* lawsuit, Doc. No. 38 at 793.) Weir-Cove argues that the Fund's counterclaims "include facts that are diametrically opposed and completely contradictory to positions taken in the" *McHugh* lawsuit. (*Id.* at 793-94.) In particular, Weir-Cove notes that the Fund has alleged that the Local 92 members, including Charles McHugh, have falsely represented that they are employees of Weir-Cove. (*Id.* at 794, record cites omitted.) According to Weir-Cove, this allegation directly contradicts the allegations made in the Fund's amended complaint in the *McHugh* lawsuit. (*Id.*, collecting record cites from *McHugh* lawsuit, Doc. No. 48 (Amended Complaint).) Weir-Cove also seeks an award of attorney's fees, costs, and expenses. (*Weir-Cove* lawsuit, Doc. No. 38-1 at 812.)

The Fund disagrees that Rule 11 sanctions are appropriate in either case. Specifically, the Fund disputes Weir-Cove's representation that the Fund's positions in the two actions rest on irreconcilably contradictory allegations. Instead, it suggests that the difference in their alternative positions is warranted by the actions of other parties and entities, including Weir-Cove, in each of the lawsuits. (*Weir-Cove* lawsuit, Doc. No. 41 at 884-85.) The Fund insists that Weir-Cove's motion is merely a trial tactic designed to divert attention away from the real issues in the Weir-Cove lawsuit; namely, the employment status of Charles McHugh. (*Id.* at 884.) As for UPMC's motion, the Fund disputes UPMC's characterization of certain complaint allegations as

7

materially false, noting that discovery has not yet taken place, and that, when the facts are developed in discovery, they will clearly demonstrate the strength of the Fund's claims. (*McHugh* lawsuit, Doc. No. 83 at 1318.) The Fund also suggests that UPMC's motion is untimely, and that the belated nature of the motion demonstrates that it was actually brought for the improper purpose of bolstering UPMC's motion to dismiss. (*Id*. at 1316-17.)

The Court finds that the issues raised in the sanctions motions are not ripe. Discovery in both actions is necessary before the Court can evaluate the merits of the motions and the allegations of fraud and impropriety raised in opposition. Accordingly, the Court shall **DENY WTHOUT PREJUDICE** the motions for sanctions, subject to refiling, if appropriate, at the end of the respective litigations.

### IV. MOTION TO DISMISS INTERVENOR COMPLAINT

In its intervenor complaint filed in the *Weir-Cove* lawsuit, Local 92 asserts claims under ERISA, 29 U.S.C. § 1132, Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, and common law. (*Weir-Cove* lawsuit, Doc. No. 10 (Intervenor Complaint ["Inter. Compl."]) ¶ 1.) According to the intervenor complaint, Local 92 is asserting these claims to protect its own rights under the collective bargaining agreements it entered into with Weir-Cove, as well as the rights of its members. (*Id*. ¶¶ 2-3, 18.) It seeks "legal, declaratory, and injunctive relief against" the Fund. (*Id*. ¶ 4.)

The Fund moves to dismiss the intervenor complaint maintaining that Local 92 lacks standing to assert claims in the *Weir-Cove* lawsuit. (*Weir-Cove* lawsuit, Doc. No. 21 at 650 [Local 92 "has neither statutory standing to assert ERISA claims, nor Constitutional standing

8

because it has no legal interest in any of the claims or assertions of the parties."].)[5] The Fund further argues that Local 92 cannot "sue a non-party to a contract for allegedly 'breaching' that contract, or assert a claim regarding a contract to which [it] is not a party and receives no benefit." (*Id.*)

### A. ERISA Claims--Standing

The Fund contends that Local 92 lacks standing to assert claims on its own behalf or on the behalf of its members under ERISA. ERISA specifically provides that the express grant of federal jurisdiction to enforce ERISA is limited to suits brought by a "participant, beneficiary, fiduciary," or the Secretary of Labor. 29 U.S.C. § 1132(e)(1). Because Local 92 is none of these, the Fund argues that there is a lack of subject matter jurisdiction over the intervenor complaint. Local 92 does not deny that the Supreme Court has found the list in § 1132(e) to be exclusive. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983). Nevertheless, Local 92 argues that it is entitled to bring these claims on behalf of its members, who would qualify as "participants" under § 1132(e).

There is a split of authority as to whether a labor union may bring an ERISA claim. *Compare N.J. State AFL-CIO v. New Jersey*, 747 F.2d 891 (3d Cir. 1984) (court lacked subject matter jurisdiction over union's ERISA action seeking declaratory judgment) with *S. Ill. Carpenters Welfare Fund v. Carpenters Welfare Fund of Ill.*, 326 F.3d 919, 922 (7th Cir. 2003) (union has Article III and "associational" standing to sue on behalf of its members who are plan participants). The Fund insists that the Sixth Circuit agrees with courts, such as the Third Circuit,

---

[5] Because it would not assist the Court, the motion to file a sur-reply (*Weir-Cove* lawsuit, Doc. No. 33) is **DENIED**.

that find unions without standing to assert ERISA claims. (*Weir-Cove* lawsuit, Doc. No. 21 at 653 [citing *Local 6-0682 Int'l Union of Paper v. Nat'l Indus. Grp. Pension Plan*, 342 F.3d 606, 609 n.1 (6th Cir. 2003)[6]].)

In rejecting the challenge to the court's subject matter jurisdiction, the Seventh Circuit relied upon a finding that the union had "associational standing" to bring suit on behalf of its members under ERISA. The Supreme Court has "recognized that an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity[.]" *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977) (citing, among authority, *Warth v. Seldin*, 422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). To set forth a claim of "associational standing," the organization must satisfy a three-prong test by showing that: (1) its members otherwise have standing to sue in their own right, (2) the interests the organization seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004) (quotation marks omitted, numerals added); *see Hunt*, 432 U.S. at 342-43 (identifying the same three-part test). The Fund fails to identify any Sixth Circuit authority that has rejected associational standing in the context of an ERISA claim.

Assuming associational standing is available under ERISA, the intervenor complaint would

---

[6] In rejecting the Union's claims under ERISA, the Sixth Circuit observed that "[u]nions are not included in [ERISA's standing provision,] §502[], and though a union might qualify as a 'fiduciary' under §502(a)(3), . . . the Union makes no effort to show how it fits this category." *Id*.

still be dismissed because it fails to establish the third prong of the "associational standing" test.[7]

The determination of

> whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually insured.

*Warth*, 422 U.S. at 515. However, where an association seeks relief in damages, "the damages claims are not common to the entire membership, nor shared by all in equal degree." *Id. See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1354 (11th Cir. 2009) ("Damage claims are incompatible with associational standing because such claims usually require 'individualized proof.'")

> While Local 92 seeks injunctive and declaratory relief, its prayer for relief also requests:
>
> A monetary judgment for all out-of-pocket expenses suffered by Local 92's bargaining unit members whom [Weir-Cove] employs, who were wrongfully denied coverage by the Fund in violation of Section 502 of ERISA.
>
> \*\*\*
>
> A monetary judgment finding the Fund and Defendants are liable for all out-of-pocket expenses suffered by the Weir Cove bargaining unit employees as a result of the Fund failing to provide the required healthcare coverage in violation of the C[ollective Bargaining Agreement] and the Participation Agreement.

(*Id.*, prayer ¶¶ 2, 7.) In order to determine an award of monetary damages for Local 92 on its

---

[7] The parties do not address the fact that Local 92 is an intervenor. "An intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing." *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994); *see Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1246 (6th Cir. 1997) (noting that the Sixth Circuit has "opted for a rather expansive notion of the interest sufficient to invoke intervention of right"). Still, an intervenor, as with any party, must satisfy Article III standing requirements. *Perry*, 16 F.3d at 690; *see Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) ("The proposed intervenors must show that they have a substantial interest in the subject matter of this litigation."). An intervenor who meets the three-prong test for associational standing would satisfy these requirements. *See Tummino v. Hamburg*, 260 F.R.D. 27, 30-31 (E.D. N.Y. 2009).

ERISA claim, testimony and documentation from the bargaining unit members would be required concerning each member's out-of-pocket expenses. Because participation in the lawsuit by the bargaining unit members would be necessary, Local 92 has failed to satisfy the third prong of the "associational standing" test. *See, e.g. Conn. State Dental Ass'n*, 591 F.3d at 1354 (declining to find associational standing where, "[a]lthough [the trade association] seeks both declaratory and injunctive relief, which are normally appropriate relief for associational standing, it also seeks compensatory and punitive damages on behalf of its members, which will require individualized proof of harm"); *Soc'y of Prof'l Eng'g Emps. in Aerospace, IFPTE Local 2001, AFL-CIO v. Boeing Co.*, No. 05-1251-MLB, 2006 WL 2850325, at *4 (D. Kan. Sept. 29, 2006) (Union could not satisfy associational standing because it could not demonstrate its right to monetary damages without the participation of its members). Because Local 92 cannot establish associational standing, the Fund's motion to dismiss the ERISA claim is **GRANTED**.

### B. LMRA/Breach of the CBA

Count II of the intervenor complaint alleges that the Fund breached the terms of the collective bargaining agreement ("CBA") between Weir-Cove and Local 92, in violation of the LMRA. (Inter. Compl. ¶ 84.) Count III asserts that the Fund's alleged breach of the CBA constitutes a breach of contract under common law. (*Id.* ¶¶ 91-92.) It is undisputed that the Fund is not a party to the CBA. (*See id.* ¶¶ 25, 31.) The Fund contends that it cannot have breached a contract to which it was not a party. (*Weir-Cove* lawsuit, Doc. No. 21 at 654.) *See Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, No. 5:09-cv-2613, 2011 WL 711568, at *8 (N.D. Ohio Feb. 22, 2011) ("[A] contractual agreement is unenforceable against a person or entity who was not a party to the contract." (quotation marks omitted)).

Local 92 concedes that the Fund is not a party to the CBA. (*Weir-Cove* lawsuit, Doc. No. 26 at 692.) Nonetheless, it notes that 29 U.S.C. § 185(c) affords this Court jurisdiction over actions by or against labor organizations. (*Id.* [quoting 29 U.S.C. § 185(c)].) This is true, but it does not answer the question of whether this labor organization can maintain a breach of contract claim against a non-party to the CBA. Local 92 notes that the Fund is a third-party beneficiary to the CBA and cites *Trustees of Detroit Carpenters Health and Welfare Fund v. River City Constr. Co., Inc.*, 99 F. App'x 612 (6th Cir. 2004) in support. (Doc. No. 26 at 693.) The decision in *River City* lends no support for the viability of these claims. There, *the benefits fund* brought suit as a third-party beneficiary to collect for delinquent contributions by an employer that was a party to the labor agreement. *River City*, 99 F. App'x at 615. Here, a union seeks to assert claims *against the Fund* for violations of the CBA. Yet, Local 92 fails to identify any authority for the proposition that a non-party fund can be sued for breaching an agreement to which it is not a party. *Cf. Wilson v. Chagrin Valley Steel Erectors, Inc.*, No. 2:16-CV-1084, 2018 WL 1512906, at *5, 7 (S.D. Ohio Mar. 27, 2018) (dismissing employer's claim that the fund breached the collective bargaining agreement by failing to properly calculate audit determinations, finding that the fund was not a party to the labor agreement). The contract claims premised on breaches of the CBA are **DISMISSED**.

    C.    **Breach of the Participation Agreement**

The intervenor complaint alleges that Weir-Cove and the Fund are "parties to the Participation Agreement, which memorializes the terms under which [Weir-Cove] must remit employer contributions to the Fund in exchange for the Fund providing health insurance benefits to Local 92's bargaining unit employees whom [Weir-Cove] employs." (Inter. Compl. ¶ 32.) In

Count IV, Local 92 alleges that the Fund "anticipatorily breached" the Participation Agreement when it took the position that Weir-Cove was not Charles McHugh's employer. (*Id*. ¶ 96.) Local 92 alleges that, "[t]aken to its logical conclusion," the Fund's decision to deny Charles McHugh benefits reveals its broader position that "no bargaining unit employee whom [Weir-Cove] employs is eligible for health insurance benefits." (*Id*. ¶ 98.) It insists that, as a third-party beneficiary to the Participation Agreement, it has standing to pursue the Fund's breach of contract. (*Id*. ¶ 100.)

There are no pled facts in the intervenor complaint that, if believed, would support Local 92's conclusory allegation that it is a third-party beneficiary to the Participation Agreement. To the extent that it is seeking to protect the rights of its members as third-party beneficiaries to the contract, it lacks associational standing for the same reasons it cannot maintain an ERISA claim on behalf of its members; namely, that awarding monetary damages would require the participation of Local 92's members.

Having considered all of the factual allegations in the intervenor complaint in a light most favorable to Local 92, the Court finds that, for the reasons set forth above, the Fund's motion to dismiss the intervenor complaint must be **GRANTED**.

## V. CONCLUSION

For all of the foregoing reasons, the motions to consolidate (*Weir-Cove* lawsuit, Doc. No. 29; *McHugh* lawsuit, Doc. No. 76) are **DENIED**; the motions for sanctions (*Weir-Cove* lawsuit, Doc. No. 38; *McHugh* lawsuit, Doc. No. 79) are **DENIED WITHOUT PREJUDICE**; and the Fund's motion to dismiss the intervenor complaint (*Weir-Cove* lawsuit, Doc. No. 21) is **GRANTED**.

**IT IS SO ORDERED**.

Dated: January 18, 2019

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**